UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LANCE LACROSSE, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 23-1582 |
| ALLIED TRUST INSURANCE COMPANY | * | SECTION "D" (2) |

## ORDER AND REASONS

Pending before me are two motions, nonparty/expert Leonard C. Quick's Motion for Protective Order and Defendant Allied Trust Insurance Company's Motion to Compel Quick's Compensation.  ECF Nos. 56, 60.  As of this date, Neither Quick nor Defendant has filed an Opposition Memorandum, and the deadline for same expired on Tuesday, December 31, 2024. *See* E.D. La. L.R. 7.5.  Presumably they intend their competing motions to serve as their Opposition Memoranda.  No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Quick's Motion for Protective Order (ECF No. 56) is GRANTED IN PART AND DENIED IN PART and  Defendant's Motion to Compel (ECF No. 60) is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

## I.    BACKGROUND

### A.  Relevant Case History

This is a Hurricane Ida case.  ECF No. 1-1.  Plaintiffs' expert engineer, Leonard C. Quick ("Quick") of Leonard C. Quick & Associates, Inc., provided initial and supplemental Property Damage Reports dated June 6, 2022, and December 8, 2023, respectively, and he is expected to testify at trial.  ECF No. 37 at 1; Nos. 35-3, 35-4.  Quick's May 17, 2024, invoice reflects charges

of $29,884.30 for services performed to date, and that is the only document describing his compensation.  ECF No. 35-7 at 2.  Neither the invoice nor any other document provides a description of what services Quick performed or the rate for same.  In Plaintiffs' November 25, 2024, Supplemental and Amended Expert Disclosures to Defendant, they assert that "Quick deems his fee schedule proprietary."  ECF Nos. 39-1 at 1; 60-1 at 3.  When questioned about providing a detailed billing at his December 4, 2024, deposition, Quick refused to do so.  ECF No. 60-1 at 4.

### B.  Quick's Motion for Protective Order

Two weeks after his deposition, Quick filed a Motion for Protective Order to prevent disclosure of his company's billing rates, which he contends are proprietary and confidential business information.  ECF No. 56-2 at 1-2.  He argues his billing rates are trade secrets in his industry and that they reflect competitive business strategies, including evaluating market conditions, service valuation, and client relationships, thus a protective order precluding discovery of same is necessary to prevent potential harm to his competitive position in the marketplace.  *Id.* at 3.  He argues that his May 17, 2024, invoice and his reports are sufficient information for Defendant to evaluate his testimony and that his billing rates are not directly relevant to the substantive issues, thus disclosure is unnecessary and outweighed by his need for confidentiality. *Id.* at 2-3.  Alternatively, Quick requests his billing rates be reviewed *in-camera* or placed under seal if the Court finds disclosure is necessary.  *Id.* at 5.

### C.  Defendant's Motion to Compel

The next day, Defendant filed a Motion to Compel Disclosure of Expert Compensation, requesting that Quick be compelled to disclose detailed billing information regarding his compensation for services as well as his retention agreement with Plaintiffs.  ECF No. 60-1 at 1-2.  Defendant argues Quick's May 17, 2024, invoice is not a meaningful disclosure of his

compensation for the services pursuant to Rule 26(a)(2)(B)(vi) because it does not describe what services were provided and at what rate. *Id.* at 3. Defendant argues that Plaintiffs did not provide a rate sheet for the services of any of their listed experts in their October 24, 2024, expert disclosures, and other than the May 17, 2024, invoice and Quick's October 23, 2024, letter regarding fees charged for his deposition,[1] it has no other information as to Quick's compensation and fees. *Id.* Defendant argues that Plaintiffs are required to disclose detailed billing of its expert's services pursuant to Rule 26(a)(2)(B)(vi) because he is expected to testify at trial on their behalf and that the information is necessary to establish potential bias and prepare for cross-examination. *Id.* at 4-5, 7. Defendant argues such information, to the extent it is considered communication with Plaintiffs' attorney, is not covered by the trial-preparation protection for communications between a party's attorney and an expert witness under Rule 26(b)(4)(C) because it relates to compensation for the expert's study or testimony, and Plaintiffs has not met their burden to establish otherwise. *Id.* at 7-8.

Defendant also argues that Quick bills for Plaintiffs' other disclosed experts expected to testify, H. Greg Arby and Winston Wood,[2] and has prevented the other experts' compensation and billings from being disclosed, despite each owning independent companies and producing separate reports. *Id.* at 6.

## II.    APPLICABLE LAW

### A.    Expert Discovery under Rule 26 and 37

Rule 26(a)(1)(A) generally requires certain information to be disclosed by a party to other parties without request. In addition, Rule 26(a)(2) requires the party to disclose the identity of any

---

[1] ECF No. 31-6. Quick's letter indicates his standard deposition fee is $3,000, which covers one hour of preparation time and three hours of deposition time, charging $750 per additional hour of deposition time. *Id.*

[2] ECF No. 33-3.

witness expected to serve as an expert at trial, accompanied by a prepared and signed written report by that witness if the party retained the witness to provide expert testimony.  FED. R. CIV. P. 26(a)(2)(A)-(B).  The expert report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* at FED. R. CIV. P. 26(a)(2)(B).  A disclosing party is required to supplement or correct its disclosure in a timely manner upon learning that the disclosure is incomplete/incorrect in some material respect and if the additional or corrective information has not otherwise been made known to the other parties in writing or during discovery; this duty must also be performed as required by the court.  *Id.* at FED. R. CIV. P. 26(e)(1)(A)-(B).  For an expert witness, the duty to supplement extends to both information in their report and that given during their deposition.  *Id.*  at FED. R. CIV. P. 26(e)(2).

If the party fails to provide proper Rule 26(a) disclosures, Rule 37(a)(3)(A) authorizes any other party to move to compel disclosure and for appropriate sanctions after having met and conferred in good faith with the deficient party in an effort to obtain the information.  FED. R. CIV. P. 37(a)(1), (3)(A).  An incomplete disclosure is treated as a failure to disclose.  *Id.* at FED. R. CIV. P. 37(a)(4).

Documents prepared in anticipation of litigation or for trial by or for another party or its representative are protected work product and thus generally not discoverable, and even if the court

requires disclosure, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of the party's attorneys or other representatives.  FED. R. CIV. P. 26(b)(3)(A)-(B).  These protections apply to communications between the party's attorney and any expert witness expected to testify.  *Id.* at 26(b)(4)(C).  A party claiming work product protection under Rule 26(b)(4)(C) has the burden of establishing the basis for the claim.[3]

One exception to work-product protection for attorney-expert communications entails communications "that relate to compensation for the expert's study or testimony."  FED. R. CIV. P. 26(b)(4)(C)(i).  The objective of this exception "is to permit full inquiry into [] potential sources of bias."[4]  It extends to all compensation for the expert's study and testimony, and in some cases, may allow for discovery beyond the statement on compensation required to be in the expert's report.[5]  A party seeking discovery of attorney-expert communications outside of the exceptions enumerated in Rule 26(b)(4)(C), or regarding draft expert reports or disclosures, "must show 'that the party has a substantial need for the discovery and cannot obtain the substantial equivalent without undue hardship.'"[6]

### B. Protective Order

A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  FED. R. CIV. P. 26(c)(1).  The party seeking the protective order bears the burden of showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from

---

[3] *Millsaps Coll. v. Lexington Ins. Co.*, No. 16-193, 2017 WL 3158879, at *3 (S.D. Miss. July 24, 2017) (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)); *Benson v. Rosenthal*, No. 15-782, 2016 WL 1046126, at *6-7 (E.D. La. Mar. 16, 2016).
[4] FED. R. CIV. P. 26(b)(4)(C)(i) advisory committee's notes to 2010 Amendments.
[5] *Id.*
[6] *Emerald Land Corp. v. Trimont Energy (BL) L.L.C.*, No. 17-1655, 2021 WL 2043415, *8 (W.D. La. May 21, 2021) (quoting FED. R. CIV. P. 26(b)(4)(C) advisory committee's notes to 2010 Amendments).

stereotyped and conclusory statements."[7]  In determining good cause, the court must balance the risk of injury without the protective order and the requesting party's need for information.[8]

Rule 26 offers a variety of potential options that the court may use to protect the moving party, including forbidding or limiting the scope of discovery into certain matters or requiring that a trade secret or other confidential research, development, or commercial information not be reveal or done only in a specific way.  FED. R. CIV. P. 26(c)(1)(A), (B), (D), (G). The Federal Rules of Civil Procedure do not expressly define the terms "trade secret" or "confidential commercial information" as used in Rule 26(c)(1)(G).  Courts have defined these terms as "information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."[9]  "As a general proposition, a district court [may] exercise its sound discretion in determining how far to restrict discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion."[10]  The trial court enjoys wide discretion in setting the parameters of a protective order.[11]

## III.  **ANALYSIS**

### A.  **Defendant's Motion to Compel**

Defendants seeks to compel Quick's detailed billing records describing the services he has performed for Plaintiffs, specifying the types of services performed and corresponding charges, as

---

[7] *E.E.O.C. v. BDO USA, L.L.P.,* 876 F.3d 690, 698 (5th Cir. 2017) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978))).
[8] *Blanchard & Co. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *5 (E.D. La. Apr. 5, 2004).
[9] *Riverkeeper v. Taylor Energy Co.*, 309 F.R.D. 381, 388 (E.D. La. 2015) (citations omitted).
[10] *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999) (citation omitted).
[11] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").

well as a copy of any retention agreement that describes the retainer amount and services for which Quick was retained.

Initially, Defendant appears to seek the motion to compel against Quick rather than Plaintiffs. Rule 37(a)(3)(A) authorizes a party to file a motion to compel disclosure of the information that another *party* is required to provide pursuant to Rule 26(a) but failed to do so; the Rule does not authorize a motion to compel a nonparty to disclose.[12] Generally, to obtain discovery from a nonparty, a Rule 45 subpoena must be used,[13] and there are many ways a party may obtain information that a nonparty has that the former wants disclosed using a subpoena duces tecum.[14] Defendant does not state whether it served Quick with a Subpoena Duces Tecum in connection with his deposition during which he refused to answer questions about billing rates.

Regardless, the Federal Rules of Civil Procedure require a party to produce documents not only that are within that party's actual, physical possession, but also documents that are within the party's constructive possession, custody or control. FED. R. CIV. P. 26(a)(1)(A)(ii); 34(a)(1). A party has "control" over documents or materials that it has the legal right to obtain even though it has no copy and even if the documents are owned or possessed by a nonparty.[15] Thus, documents owned or possessed by agents, attorneys, hired consultants and other third-parties hired by a party that the party can reasonably obtain the requested information from upon its own request fall within

---

[12] *See also Hamernick v. Daniels*, No. 19-00119, 2021 WL 9408996, at *1-2 (W.D. Ky. Jan. 14, 2021) (finding Rule 37(a)(3)(A) "only enforceable against the parties," not Plaintiff's mental health provider, a nonparty); *Vreeland v. Tiona*, No. 17-01580, 2021 WL 2290788, at *1-2 (D. Colo. June 3, 2021) (finding dismissed defendants nonparties and thus not required to respond to Plaintiff's motion to compel disclosure); *McCaskill v. 13th Jud. Cir. Ct. of Ala.*, No. 22-00250, 2024 WL 3468797, at *1 (S.D. Ala. Mar. 18, 2024) (finding Rule 37(a)(3)(A) motions "may only be brought against a 'party'").
[13] "Subpoenas are essential to obtain discovery from nonparties." FED. R. CIV. P. 45 advisory committee's notes to 2013 Amendments.
[14] *See Hamernick*, 2021 WL 9408996, at *2.
[15] *Becnel v. Salas*, No. MC 17-17965, 2018 WL 691649, at *3 (E.D. La. Feb. 2, 2018) (citations omitted); *Est. of Monroe v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004) (citation omitted).

that party's custody or control.[16]   Quick's billing rates and retainer information is information reasonably accessible to Plaintiffs, and thus, appropriately subject to a motion to compel.

As to the substance of the request, an expert's billing rate, total amount billed, and retainer are communications related to compensation for the expert's study or testimony.  This information is not privileged work-product under Rule 26(b)(4)(C) and must be disclosed.[17]   The details and the precise work performed, however, is a different matter.  Although courts routinely required experts to produce such information before the 2010 amendments to Rule 26,[18] in light of the greater protections for communications with experts in the amendments, most courts now require disclosure of only the billing rate and total compensation.[19]   Courts reason that a detailed descriptions of services, with corresponding amounts charged and time used to complete each task,

---

[16] *Becnel*, 2018 WL 691649, at *3 (" 'Control' . . . extends to materials which the party to whom the request is made has the legal right to obtain . . ., even though in fact it has no copy.") (brackets in original) (citing cases); *Dillard Univ. v. Lexington Ins. Co*., No. 06-4138, 2008 WL 11350306, at *1 (E.D. La. Mar. 27, 2008) (collecting cases) (holding materials provided by the party to its hired consultants may be within that party's possession, custody, or control).

[17] *Innovention Toys, LLC v. MGA Ent., Inc.*, No. 07-6510, 2012 WL 12990384, at *6 (E.D. La. Oct. 17, 2012) (recognizing that, while most expert reports disclose hourly rate, "compensation" encompasses more information than simply a billing rate, and thus, Rule 26 requires disclosure of the number of hours billed at that rate in order to allow the opponent to gauge the expert's financial interest in this matter); *Foster v. State Farm Fire & Cas. Co.*, No. 22-50, 2023 WL 2616939, at *5 (S.D. Miss. Mar. 23, 2023) (noting that party adequately disclosed expert's compensation by providing hourly rate and retainer information); *Kan. City S. Ry. Co. v. Nichols Constr. Co.*, No. 05-1182, 2008 WL 11351313, at *3 (E.D. La. Oct. 1, 2008) (citations omitted) (noting that attorneys typically consider the compensation paid satisfied by disclosure of the expert's hourly rate); *see also Penn Eng'g & Mfg. Corp.*, No. 19-513, 2021 WL 3403470, at *8 (E.D. Pa. Aug. 3, 2021) ("I find *Sherwin-Williams* [*Co. v. PPG Indus., Inc.*, No. 17-01023, 2019 WL 2501471 (W.D. Pa. Mar. 19, 2019)] persuasive and grant similar relief in this case. PEM shall produce a new redacted version of the invoice showing each timekeeper's billing rate and the total monetary amount of his or her billings."); *Foy v. Encompass Home & Auto Ins. Co.*, No. 22-00351, 2024 WL 264676, at *4 (M.D. Pa. Jan. 24, 2024) (citations omitted) (allowing disclosure of redacted invoices so long as the experts' billing rates and total compensation were shown); *Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 594 (Fed. Cl. 2016) (holding that production of engagement letter, retainer, fee arrangement, and emails discussing compensation satisfied disclosure obligation); *Silgan Containers v. Nat'l Union Fire Ins.*, No. 09-05971, 2011 WL 1058861, at *5 (N.D. Cal. Mar. 23, 2011) (finding an expert's retainer agreement required to be disclosed pursuant to Rule 26(a)(2)(B)(vi)).

[18] *See e.g.*, *E.E.O.C. v. Wal-mart Stores, Inc.*, No. 01-339, 2008 WL 11346464, at *3 (E.D. Ky. Aug. 5, 2008); *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460 (E.D. Pa. 2005).

[19] *Foy*, 2024 WL 264676, at *4 n.2 (citations omitted).

are protected from discovery because Rule 26's disclosure obligation is focused on the total compensation and benefits provided to the expert rather than the tasks performed that led to same.[20]

The total amount of compensation paid provides full discovery of potential bias, without the need to get into the party's litigation strategy documented in invoices. Disclosure of itemized information requires a showing of substantial need,[21] and simply arguing bias, without further explanation, is insufficient.[22] Thus, Defendant is entitled to obtain documents reflecting the total compensation received, the types of services performed, and any retention agreement that describes the retainer amount and services provided. Defendant is not, however, entitled to obtain the detailed billing records describing the particular services performed and time spent on same.

### B. Quick's Motion for Protective Order

Contrary to Quick's assertions, his company's billing rates/"pricing list"[23] cannot be considered a trade secret nor do same reflect competitive business strategies which, if disclosed,

---

[20] *See Davita*, 128 Fed. Cl. at 593 (citing FED. R. CIV. P. 26(b)(4)(C)(i) advisory committee's notes to 2010 Amendments); *Penn Eng'g & Mfg. Corp.*, 2021 WL 3403470, at *8 (holding party disclosing invoices may redact "the dates, substantive descriptions and amounts of time billed in specific entries"); *Sherwin-Williams*, 2019 WL 2501471, at *3 (special master recommending that all expert witness invoices produced should have "time entry dates, the amount of time spent on each entry, and descriptive information" redacted); *Washington v. City of Chi.*, No. 16-1893, 2020 WL 13953222, at *2, 4 n.7 (N.D. Ill. Oct. 5, 2020) (stating the purpose of the 2010 amendments to Rule 26(b)(4) are served by "protecting as work product details related to draft reports and the expert's drafting process, which includes an expert's description of how much time the expert spent on each task" and allowing questions of experts regarding total compensation and how the compensation was determined but noting "questions regarding the amount of compensation for a particular task or the time spent on a particular task . . . may be properly objectionable"); *Kan. City S. Ry. Co. v. Nichols Constr. Co.*, No. 05-1182, 2008 WL 11350333, at *2 (E.D. La. Sept. 26, 2008) (denying production of detailed billing invoices because particular billing entries are neither relevant nor likely to lead to evidence of bias).
[21] *See Emerald Land Corp*, 2021 WL 2043415, *8 (quoting FED. R. CIV. P. 26(b)(4)(C) advisory committee's notes to 2010 Amendments); *Penn Eng'g & Mfg. Corp.*, 2021 WL 3403470, at *7 (quoting *Sherwin-Williams*, 2019 WL 2501471, at *5 (citing *Amster v. River Cap. Int'l Grp., LLC*, No. 00-9708, 2002 WL 2031614, at *2 (S.D.N.Y. Sept. 4, 2002); *Button v. Royal Caribbean Cruise Ltd.*, No. 12-23624, at *3-4 (S.D. Fla. July 12, 2013)) ("[B]oth before and after the 2010 amendments to Rule 26, courts have refused to order 'a breakdown of the compensation in an invoice' where the movant fails to show a need for such information."); *see also Washington*, 2020 WL 13953222, at *3 n.6 (noting Defendants did not argue they "have substantial need for [the experts' time allocation to specific tasks]" notwithstanding the information being privileged).
[22] *Penn Eng'g & Mfg. Corp.*, 2021 WL 3403470, at *7.
[23] ECF No. 56-2 at 3.

might be harmful such that discovery should be precluded.[24]  He provides no affidavit or other evidence to demonstrate what efforts, if any, he takes to keep this information confidential or otherwise demonstrate that each customer (or potential customer) is required to sign a confidentiality agreement regarding same.  It would indeed be surprising if Quick did not share billing information with clients (or potential clients) who contact him to provide services, and without evidence that same is provided subject to disclosure protections, I cannot find that same constitutes a trade secret.  Thus, Quick's request to preclude discovery of his billing rates/pricing list is improper and must be denied.

Quick's alternative request for *in camera* inspection and/or filing his information under seal appears to misunderstand the difference between filing documents in the public record under seal and producing documents during discovery, each of which are governed by substantially different standards.  The standard for placing a document under seal is different from the standard governing whether unfiled *discovery* should be kept confidential.[25]  At the discovery stage, when parties are exchanging information, a protective order under Rule 26(c) may well be proper to honor legitimate privacy interests and facilitate the efficient exchange of information.[26]  As to court filings, however, "the working presumption is that judicial records should not be sealed" and the court "must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure" before deciding to seal filed documents.[27]

---

[24] *Navarro Pecan Co. v. Camilla Pecan Co.*, No. 13-734, 2014 WL 12586170, at *4 (citing *Exxon Chem. Pats., Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 671 (S.D. Tex. 1990); *Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F. Supp. 2d 675, 685 (N.D. Tex. 2013)).
[25] *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021).
[26] *Id.* at 420 (emphasis in original) (citations omitted).
[27] *Id.* at 419 (internal quotations and citations omitted).

Given the absence of any reason to use or disclose Quick's billing information outside the parameters of this litigation, the Court will allow Quick to produce the information requested subject to a limited protective order (a) allowing him to designate the information as confidential and (b) precluding the use or disclosure of same for any purpose unrelated to this litigation. Any request to file same into the court record must comply with Local Rule 5.6, with the burden to establish that sealing is appropriate resting on the party seeking to limit disclosure. This limited protective order allows the discovery of relevant information to proceed while at the same time protecting a non-party's interest in keeping his commercially sensitive information outside of the general public domain.

## IV.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Nonparty Expert Leonard C. Quick's Motion for Protective Order (ECF No. 56) and Defendant Allied Trust Insurance Company's Motion to Compel Quick's Compensation (ECF No. 60) are GRANTED IN PART AND DENIED IN PART as stated herein.

IT IS FURTHER ORDERED that Quick produce information regarding any retention agreement(s) with Plaintiffs, any expert billing rates applicable in this case, services performed, and any retainer(s) paid in this case. Quick may mark same as "Confidential-Subject to Court Protective Order" and such information shall not be used for any purpose whatsoever other than for purposes of this litigation, which includes any appeal thereof.

New Orleans, Louisiana, this _____8th_____ day of January, 2025.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE